Honorable John L. HILL, Attorney General of Texas, et al., Appellants,

v.

TEXAS WATER QUALITY
BOARD, Appellee.

No. 12752.

Court of Civil Appeals of Texas,
Austin.

July 12, 1978.

Rehearing Denied July 26, 1978.

John L. Hill, Atty. Gen., David M. Kendall, Jr. and Troy C. Webb, Asst. Attys. Gen., Austin, for appellants.

James W. Wilson, Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, Special Counsel, for appellee.

# 739

PHILLIPS, Chief Justice.

The Texas Water Quality Board [1] adopted certain rules and regulations designed to protect the water of the Edwards Underground Reservoir; however, the Attorney General of Texas disagreed with these rules and brought suit in the district court of Travis County to set them aside. The trial court sustained the Board's contention that the Attorney General lacked standing to bring the suit and it was dismissed.

We affirm this judgment.

The suit was brought under the authority of the Texas Administrative Procedure Act, Article 6252–13a § 12, to set aside the Board's orders as invalid.

The Attorney General conceives his role to be the lawfully constituted guardian of the public interest, which authorizes him, under the common law adopted by this state in its early history,[2] to seek redress against a state agency when he believes its action to be wrong or inimical to the public interest.

The Board, on the other hand, contends that what authority the Attorney General has is derived from the Texas Constitution and from the statutes of this state and that under the law the Attorney General is the Board's lawyer, is committed to defend the Board's orders, and that there is nothing in the Constitution or statutes which expressly or impliedly authorizes him to bring this suit against the State.

It should be stated at the outset that the Attorney General's claim that he is seeking to set aside an "illegal" action of the Board refers to the manner in which the Board has exercised discretionary powers delegated to it by the Legislature and he seeks a declaration that the Board's orders were arbitrary and unreasonable. This is not a suit in which the Attorney General seeks to enjoin a state official from acting outside the scope of his lawful authority.

■ Although the Attorney General, in his brief, refers to the "unconstitutional"

action of the Board, the only way that the Board's action could be remotely suspect under the Constitution of either the State or the Federal government would be a violation of equal protection due, as alleged by the Attorney General, to its arbitrary, capricious, and unreasonable action. This contention must fail as equal protection is a constitutional guaranty afforded only to *"persons"* and the State does not have standing to raise the claim. *South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966).

■ A suit against a state agency which is exercising governmental functions only is a suit against the State. *Department of Public Safety v. Great Southwest Warehouses*, 352 S.W.2d 493 (Tex.Civ.App.1962, writ ref'd n. r. e.).

The facts before us are these: the orders in question concern the Edwards Underground Reservoir, a hydrologically independent water-bearing limestone formation found in Kinney, Uvalde, Medina, Bexar, Kendall, Comal and Hays Counties, respectively. Substantially all of the water which enters the reservoir enters where the limestone formation appears exposed at the ground surface and this surface is generally referred to as the "recharge zone." Certain activities on the "recharge zone" provide a source of pollution for the reservoir. In recognition of the pollution problems created by activity over the recharge zone, the Board entered its order No. 75–0128–20 regulating activities where the recharge zone appears in the seven counties referred to above. Later, the Board replaced this order with seven separate orders, one applying to each separate county where the recharge zone is found. The Attorney General seeks to set aside these orders on grounds that the orders significantly lessen the degree of control of pollution causing activity over the recharge zone, thus posing a threat of contamination of the reservoir which would be a hazard to those people dependent upon it for drinking purposes; that the orders

---

1. Now the Texas Department of Water Resources, S.B.No.1139, 65th Leg., 1977.

2. 2 Gammel's Laws 177 (1840).

are arbitrary, capricious, and unreasonable; and that by treating citizens similarly situated in a different manner, the order constitutes a denial of equal protection of the laws guaranteed by the Constitution of the United States and of the State of Texas.

The Attorney General seeks to justify his position, in part, by pointing out that he authorized the Board to employ outside counsel to represent it in this cause of action.[3]

Bexar County intervened as a plaintiff seeking to set aside the actions of the Board as did the City of San Antonio. The counties of Medina, Uvalde, and Kinney intervened on behalf of the Board. The Board filed pleas in abatement questioning, in effect, the standing of the Attorney General to bring this suit, and, as stated above, the trial court sustained the Board's plea, dismissed the cause of action brought by the Attorney General, and severed and consolidated into a single cause the suits brought by the City of San Antonio and Bexar County.

The Attorney General is before us on five points of error, briefed together, which, in effect, complain of the action of the court in holding that his suit is contrary to the constitutional and statutory provisions fixing the duties of that office.

In defense of his suit against the State, the Attorney General maintains that he is the chief legal officer of the State of Texas, an office originating in England where that office was under the duty of representing the Crown in all legal matters in which it might be concerned. He then cites authority[4] for the proposition that it is generally held that, in addition to the powers conferred and duties imposed upon him by statute, he is clothed and charged with all the common law powers and duties pertaining to his office as well, except insofar as they have been expressly restricted and modified by statute or the State Constitution. These powers would include authority as the public interest may, from time to time, require, to institute, conduct, and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the state, the preservation of order and the protection of public rights. He then cites authority which he contends establishes his common law powers in Texas.[5]

We do not deem it necessary for the purposes of this opinion to further elaborate on the Texas cases cited by the Attorney General which allegedly suggest certain common law powers inherent in that office. Suffice to say that none of them concern the question before us. Nor will we discuss the out-of-state authority cited as the factors controlling these cases and other writings, whether because of the facts involved or the statutes or constitutional provisions relative thereto, they are dissimilar to those controlling here and are readily distinguishable.

Both parties hereto agree that should the Attorney General have the common law powers, such powers can be circumscribed by the Constitution and the statutes of this state. Consequently, we need pass no judgment on the common law powers question and base our opinion solely on the duty of the Attorney General to represent the appellee herein under the Constitution and the laws of this state.

In *Garcia v. Laughlin*, 155 Tex. 261, 285 S.W.2d 191 (1956), the question before the Court was whether the Attorney General had the authority to bring an action for the removal of a county commissioner from of-

---

3. Tex.Laws 1975, Ch. 743, Art. V, § 41 at 2864 (Appropriation Act).

4. 7 Am.Jur.2d *Attorney General*, § 6, pp. 6–7, Ruling Case Law, Vol. 11 at p. 916.

5. *Common Law Powers of State Attorneys General—National Association of Attorneys General*, May, 1977, pp. 22–23; *Common Law Powers and Duties of the Attorney General*, 7 Baylor L.Rev. 1 (1955); Kerns B. Taylor, *Modernizing the Powers of the Attorney General of Texas*, 36 Tex.Bar Jr. 51 (1973); *State v. Delesdenier*, 7 Tex. 76 (1851); *State v. Farmers Loan and Trust Co.*, 81 Tex. 530, 17 S.W. 60 (1891); *Yett v. Cook*, 115 Tex. 205, 221 S.W. 837 (1926); *Agey v. American Liberty Pipe Line Co.*, 141 Tex. 379, 172 S.W.2d 972 (1943); among others.

fice. In contending that he did, the then Attorney General relies strongly on the common law powers doctrine. In denying the Attorney General the authority he asserted, the Court stated:

". . . Article 4, § 22, defines the duties and powers of the Attorney General to represent the State ' * * * in all suits and pleas in the Supreme Court of the State in which the State may be a party * * * and perform such other duties as may be required by law. * * ' This article was also amended November 2, 1954, but the quoted language is substantially that existing prior to the amendment. *The powers conferred by the Constitution upon the state officials are generally held to be exclusive, and except in the manner authorized by the Constitution, these powers cannot be enlarged or restricted.*" (Emphasis added) (285 S.W.2d at 194)

*Brady v. Brooks*, 99 Tex. 366, 89 S.W. 1052 (1905), construed the Texas Constitution as allowing the Legislature to expand the powers of the Attorney General to include representation of the State in the trial courts.

The Court in *Garcia* then specifically approved the decision of the Court of Civil Appeals in *State v. Harney*, 164 S.W.2d 55 (Tex.Civ.App.1942, writ ref'd w. o. m.), also denying the Attorney General authority to bring suit to remove a local official from office. The Supreme Court stated that *Harney* "very ably and thoroughly discussed the rights and powers of the Attorney General in his representation of the State in its litigation," and quoted with approval the following statement from *Harney*:

"it is our considered judgment that, since there is no constitutional or statutory provision which vests in the Attorney General the power, or makes it his duty, to institute actions for the removal of county officers under the provisions of Art. 5, § 24, of the Constitution, and Art. 5970 of the Statutes, [Title 100—Officers —Removal of, Vernon's Annotated Civil Statutes] the Attorney General cannot assert or exercise such power and duty in this action." (285 S.W.2d at 194–95)

■ Under the authority of both *Garcia* and *Harney*, we hold that the Attorney General's exclusive right and power under the Constitution and statutes to represent state agencies preclude the Attorney General from bringing suit against appellee.

Another leading case on the subject is *Maud v. Terrell*, 109 Tex. 97, 200 S.W. 375 (1918). Here the exclusive nature of the State's representation was explicitly recognized:

". . . The powers thus conferred on these officials [the Attorney General and county and district attorneys] are exclusive. The Legislature cannot devolve them upon others. Nor can it interfere with the right to exercise them. . . . It may provide assistance for the proper discharge by these officials of their duties, but since *in the matter of prosecuting the pleas of the State in the courts the powers reposed in them are exclusive in their nature*, it cannot, for the performance of that function, obtrude other persons upon them and compel the acceptance of their services. Wherever provision is made for the services of other persons for this express purpose, it is the constitutional right of the Attorney-General and the county and district attorneys to decline them or not at their discretion and, *if availed of, the services are to be rendered in subordination to their authority*." (Emphasis added) (200 S.W. at 376)

■ Thus, either the Attorney General or a county or district attorney may represent the State in a particular situation, but these are the only choices, whichever official represents the State exercises exclusive authority and if services of other lawyers are utilized, they must be "in subordination" to his authority. To uphold the Attorney General's position would give rise to an intolerable situation which, as was aptly observed by the trial court, would put him on both sides of the lawsuit.

The judgment of the trial court is affirmed.

Affirmed.